(907 P.2d 898)

No. 72,458

STATE OF KANSAS, *Appellee*, v. RICHARD LEROY CLARK,
*Appellant*.

Opinion filed December 8, 1995.

*Thomas Jacquinot*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Jacquelyn E. Ulrich*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., RULON and GREEN, JJ.

PIERRON, J.: Richard Leroy Clark pled guilty to robbery in violation of K.S.A. 1994 Supp. 21-3426. Clark's sentence fell into block 5-I on the nondrug grid, a "border box," and he was sentenced to 32 months in prison. Since the sentence fell into a border box, Clark was eligible for a nondeparture community corrections sentence. He appeals his sentence, alleging there is systematic prejudice against blacks in sentencing in Johnson County. He contends that because the judge failed to give race-neutral justifications for the sentence, he was denied equal protection and due process of law and must be resentenced. We affirm.

Clark pled guilty in the robbery of two persons in Johnson County. The robbery occurred on or about August 20, 1993. The presentence investigation (PSI) report recommended that Clark be placed on probation with an assignment to community corrections.

Clark argued that he was in drug counseling, had prepaid for the counseling, had found gainful employment, had letters of recommendation from his employer, and was taking care of his minor children. He apologized for his actions and said he was willing and able to comply with all of the conditions of the PSI report. Therefore, Clark argued, he was a good candidate for probation. The State opposed probation. Without making specific findings, the trial court sentenced Clark to 32 months in prison, a nondeparture sentence.

Clark is a 30-year-old black male from Wyandotte County. He asserts that Johnson County has a predominantly white population. He also asserts that historically in Johnson County nonwhite offenders have received harsher sentences than white offenders. Clark promised to provide this court with statistical support for these assertions. The record does not include this information. At oral argument, counsel for Clark made reference to legislative studies of sentencing in Kansas which alleged harsher sentencing of nonwhite offenders as a reason for adopting sentencing guidelines in Kansas.

Clark argues he was denied due process of law and equal protection at his sentencing hearing. He claims that since Kansas and Johnson County have allegedly imposed harsher sentences on nonwhite offenders in the past, this establishes a prima facie case of discrimination. Therefore, Clark argues, whenever a judge sentences a nonwhite defendant to more than the minimum sentence or to imprisonment when there is also presumptive assignment to community corrections (border boxes) the judge must put forth credible race-neutral reasons to support the sentence. Clark cites to *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), to support this proposition.

In *Batson*, the Supreme Court held that a showing of disparate impact alone may be proof of unconstitutionality in circumstances where the discrimination is very difficult to explain on nonracial grounds. 476 U.S. at 93. The Court established a three-part test to determine whether striking minority members of the jury pool during peremptory challenges was constitutional in a given case.

First, the defendant must establish a prima facie case of discrimination, which may be done by showing systematic disparate impact. Once a prima facie case of discrimination has been made, the prosecutor must come forward with a race-neutral explanation for striking the jurors. The trial court must then determine whether the defendant has established purposeful discrimination. 476 U.S. at 95-98. Kansas has adopted the *Batson* test for discrimination in peremptory strikes. See *State v. Poole*, 252 Kan. 108, 110, 843 P.2d 689 (1992).

Clark urges this court to adopt, by analogy, a similar test for alleged discrimination in sentencing.

A sentence within the sentencing guidelines will not be disturbed on appeal if it is within a trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. See *State v. Starks*, 20 Kan. App. 2d 179, 181, 885 P.2d 387 (1994). The party claiming error in sentencing has the burden to show that the sentence was the result of partiality, prejudice, oppression, or corrupt motive. *State v. Starks*, 20 Kan. App. 2d at 183. When the defendant is sentenced to a presumptive sentence, there is a strong legislative presumption that the sentence is not the result of par-

tiality, prejudice, oppression, or corrupt motive. 20 Kan. App. 2d at 184.

A sentence of imprisonment in a sentencing guidelines border box case is a presumptive sentence for purposes of appeal. *State v. Bost*, 21 Kan. App. 2d 560, 571, 903 P.2d 160 (1995). Therefore, a defendant challenging a sentence of imprisonment in a border box case has the burden of proving that the sentence was the result of partiality, prejudice, oppression, or corrupt motive.

Clark's sentence falls within block 5-I on the nondrug grid, which makes it a border box sentence. Accordingly, under Kansas law, Clark must show that his sentence was the result of actual prejudice before this court can order resentencing.

Turning to the suggested *Batson* process, a sentence within the guidelines is itself evidence of a race-neutral basis for the sentence imposed. See *Starks*, 20 Kan. App. 2d at 184. This renders moot the question of whether Clark has presented a prima facie case of discrimination. See *State v. Gadelkarim*, 256 Kan. 671, 887 P.2d 88 (1994). In *Gadelkarim*, the court requested race-neutral justifications for peremptory strikes, and the State provided them. The Kansas Supreme Court held that the State's compliance with the second step made the first step moot. The burden shifted to Gadelkarim to show actual prejudice. 256 Kan. at 691-92.

Here, the State has met the burden of initially presenting a valid race-neutral justification for the sentence imposed: the sentence was within the sentencing guidelines. Under a *Batson*-type test, the burden would shift to Clark to show actual prejudice. This is the same requirement imposed on Clark under *Starks*. As Clark presents no evidence of actual prejudice and, in fact, does not even argue that the trial court actually discriminated against him in imposing sentence, he has failed to make the showing required under *Starks*.

Clark also argues the district court was required to make specific findings of fact when it failed to sentence him to an assignment to community corrections, in light of the recommendation in the PSI report. In *State v. Mares*, 20 Kan. App. 2d 971, 972, 893 P.2d 296, *rev. denied* 257 Kan. 1095 (1995), this court held that a trial court is not required to issue specific findings of fact when it imposes a

nondeparture sentence. Under *Bost*, imposition of a prison sentence instead of assignment to community corrections for border box cases is a nondeparture sentence. 21 Kan. App. 2d at 569. Accordingly, the district court judge was not required to make specific findings of fact when it imposed a nondeparture prison sentence on Clark.

The Kansas Legislature examined in great detail the question of unbalanced sentencing in Kansas and provided a comprehensive remedy through the sentencing guidelines. Great deference should be given to the judgment of the legislature in crafting legislative remedies, especially when, as here, there is no evidence of present disparate impact in the application of those guidelines.

Affirmed.